UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LEE CHAPMAN, | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )    No. 1:16-cv-00231-JDL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge (i) ignored a Maine Department of Health and Human Services ("DHHS") disability determination and (ii) improperly rejected an opinion of treating physician Charles Kriegel, D.O. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 4-9.[2] I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 16, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] At oral argument, the plaintiff's counsel withdrew a third point of error, that the administrative law judge relied on flawed vocational expert testimony. *See* Statement of Errors at 9-12.

1

administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, Finding 1, Record at 15; that she had severe impairments of fibromyalgia, arthritis, and chronic pain, Finding 3, *id.*; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), could lift/carry 10 pounds frequently and 20 pounds occasionally, sit for four hours and stand/walk for four hours out of an eight-hour workday, would require a sit/stand option every hour for a few minutes at a time, could occasionally kneel, crawl, crouch, and stoop, could not balance, was restricted from vibrations and hazards such as machinery and heights, and was limited to simple jobs with simple instructions and limited changes, Finding 5, *id.* at 16; that, considering her age (43 years old, defined as a younger individual, on her alleged disability onset date, September 29, 2012), education (high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 20; and that she, therefore, had not been disabled from September 29, 2012, through the date of the decision, December 12, 2014, Finding 11, *id.* at 21. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Failure To Address DHHS Finding

The plaintiff first seeks remand on the basis that the administrative law judge ignored a DHHS disability determination that she contends was particularly probative because DHHS used the same five-step sequential evaluation process employed by the commissioner. *See* Statement of Errors at 4-6. In that determination, dated July 20, 2011, DHHS reversed a March 25, 2011, denial of the plaintiff's application for SSI-related MaineCare benefits premised on the fact that she had been determined to be capable of at least light work. *See* Record at 399. The plaintiff had submitted new evidence to DHHS in the form of an April 6, 2011, statement of Dr. Kriegel. *See id.* at 400. The statement does not appear of record; however, DHHS summarized it as stating:

> I have been this patient's physician for 25 years. This patient is under my care for Cardiac arrhythmia, Fibromyalgia, Osteoarthritis and Degenerative disc disease. She cannot work. She is disabled.

*Id.* at 401 (internal quotation marks and italics omitted). At Step 4, after noting that the plaintiff had argued that she lacked the RFC to do any work and that Dr. Kriegel had indicated she was unable to work, DHHS stated that it had concluded "that she lacks the capacity to even perform sedentary work on a sustained basis." *Id.* at 404. At Step 5, it stated that, given that conclusion, it determined that the plaintiff "cannot work, and therefore meets the disability criteria for SSI-related MaineCare benefits." *Id.*

The administrative law judge made no mention of the DHHS determination, *see id*. at 15-21, an omission that the plaintiff contends transgressed Social Security Ruling 06-03p ("SSR 06-03p"), *see* Statement of Errors at 4-6.

SSR 06-03p provides, in relevant part, that, although "the final responsibility for deciding certain issues, such as whether [a claimant is] blind disabled, is reserved to the Commissioner[,]" adjudicators "are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies." SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016), at 334. "Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." *Id*. The ruling adds, in relevant part:

> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases . . . .

*Id*.

The commissioner argues that the administrative law judge complied with SSR 06-03p in that, while she did not discuss the DHHS determination, she referred to it in the List of Exhibits appended to her decision, indicating that she had at least "considered" it, and that she was not required to discuss it. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 3-4. She argues, in the alternative, that even if the administrative law judge did err in failing to consider and/or discuss the determination, the error is harmless in that, (i) despite the superficial similarity of the five-step evaluation process used by DHHS to that

of the commissioner, the analysis differed, and (ii) the DHHS determination was issued more than a year prior to the plaintiff's alleged onset date of disability, rendering it irrelevant to the instant claim. *See id*. at 4-6.

At oral argument, the plaintiff's counsel acknowledged that the presence of the DHHS determination on the List of Exhibits might evidence its consideration. However, he underscored that this did not fulfill SSR 06-03p's further requirement that the administrative law judge explain that consideration.

The commissioner's counsel countered that, while the mere presence of the DHHS determination on the List of Exhibits was not the most compelling evidence of its consideration, it was adequate evidence. He noted that the commissioner directs that such exhibit lists be prepared in final form in cases involving partially or wholly adverse decisions to comply with "the constitutional due process requirement that a claimant has the right to know upon what basis the ALJ [administrative law judge] is making the decision in his/her case[.]" Social Security Administration, Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-1-20. Thus, he reasoned, one can presume that the DHHS determination was considered. He disputed that SSR 06-03p requires the provision of an explanation, pointing out that the ruling states that adjudicators "*should* explain the consideration given to these decisions[.]" SSR 06-03p at 334 (emphasis added).

As the plaintiff's counsel essentially acknowledged, the inclusion of the DHHS determination in the List of Exhibits is adequate evidence that the administrative law judge considered it. Yet, I am not persuaded that SSR 06-03p requires no explanation of that consideration. As the commissioner notes, *see* Opposition at 4 n.1, this court has long held that, with respect to disability ratings decisions by the U.S. Department of Veterans Affairs ("VA"),

administrative law judges must explain the weight given to such determinations and afford them some weight, *see, e.g., Genness-Bilecki v. Colvin*, No. 1:15-cv-387-JHR, 2016 WL 4766229, at *5 (D. Me. Sept. 13, 2016). In that context, it recently observed that the standard it has set for the explication of VA disability ratings decisions is consistent with the requirements of SSR 06-03p. *See id* at *4 n.3; *see also id*. at *5 ("The administrative law judge failed to explain the weight given to the VA disability ratings decision, in violation of both SSR 06-03p" and the court's line of cases pertaining to the handling of VA disability ratings decisions.).

The administrative law judge, therefore, erred in failing to explain her handling of the DHHS determination. Nevertheless, as the commissioner argues in the alternative, the error is harmless.

As the commissioner's counsel pointed out at oral argument, this court has held, with respect to a different section of SSR 06-03p pertaining to explanation of the consideration given to opinions from "other sources," that "a decision complies with the requirements of SSR 06-03p when it makes clear that, had the administrative law judge expressly discussed the opinion of an 'other source,' he or she would have rejected it." *Robshaw v. Colvin*, No. 1:14-cv-281-JHR, 2015 WL 3951959, at *5 (D. Me. June 28, 2015) (citation omitted). That section of the ruling is worded differently from the section pertaining to other agencies' disability decisions in that it provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p at 333.

For that reason, as concerns disability decisions of other agencies, an administrative law judge cannot be said to have complied with SSR 06-03p absent an explanation for the handling of such decisions. Nonetheless, I agree with counsel for the commissioner that any error in discussing a DHHS determination is rendered harmless if the decision "makes clear that, had the administrative law judge expressly discussed the [DHHS determination], he or she would have rejected it." *Robshaw*, 2015 WL 3951959, at *5.[3]

For three reasons, that is the case here.

First, as the commissioner notes, *see* Opposition at 4, while DHHS superficially followed the commissioner's five-step sequential evaluation process, its analysis was substantively different. At Step 4, DHHS did not determine the plaintiff's RFC, that is, "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[,]" Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-8p"), at 144, but, rather, simply considered whether she was capable of performing the full range of sedentary work, defined as entailing, *inter alia*, "mostly sitting, with some standing and walking[,]" Record at 404.

In making the more nuanced RFC determination, the administrative law judge deemed the plaintiff capable of performing a reduced range of light work, in that she could sit for four hours and stand/walk for four hours in an eight-hour workday and required a sit/stand option. *Compare* Finding 5, Record at 16 *with* Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-10"), at 29 (full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday).

---

[3] As noted above, this court has treated VA disability ratings decisions differently, imposing a requirement beyond that contained in SSR 06-03p: that an administrative law judge must give such decisions at least some weight. *See, e.g., Genness-Bilecki*, 2016 WL 4766229, at *5. As a result, it is difficult to make a persuasive case that a failure to address a VA disability ratings decision is harmless error. *See, e.g., id*.

In so finding, the administrative law judge essentially agreed with the DHHS that the plaintiff could not perform the full range of sedentary work, which entails, *inter alia*, sitting for about six hours of an eight-hour workday. *See* Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-9p"), at 154.

However, while DHHS determined that the plaintiff was disabled based solely on her inability to perform the full range of sedentary work, the administrative law judge found her not disabled based on an analysis of her remaining capabilities and the testimony of a vocational expert at hearing. There is, thus, no reason to believe that the administrative law judge's consideration of the DHHS determination would have altered the outcome.

Second, the sole evidentiary basis for the DHHS determination was an April 6, 2011, statement from Dr. Kriegel that is even less specific than the opinion at issue here: Dr. Kriegel had merely stated that the plaintiff could not work and was disabled. *See* Record at 401. Because the administrative law judge gave little weight to the more detailed Kriegel opinion, there is no reason to believe that she would have been swayed by a disability determination based on an even more conclusory statement of Dr. Kriegel.

Third, the DHHS determination predated the plaintiff's alleged onset date of disability by more than a year. As the plaintiff's counsel acknowledged at oral argument, at about the time of the issuance of that determination, the commissioner denied an earlier application by the plaintiff for disability benefits. Counsel for the commissioner represented that, when the plaintiff presented the DHHS determination for the first time to the Appeals Council in challenging the denial of the earlier application, the Appeals Council concluded that it would have not have changed the outcome of the decision. These circumstances attenuate the relevance of the DHHS determination. *See, e.g.*, *Nelson v. Colvin*, No. 1:15-cv-00450-JAW, 2016 WL 4059149, at *3 (D. Me. July 29,

2016) (rec. dec., *aff'd* Aug. 26, 2016), *appeal docketed*, No. 16-2236 (1st Cir. Oct. 5, 2016) (administrative law judge's failure to consider treating records predating claimant's alleged onset date of disability and covering time period when claimant was engaging in substantial gainful activity did not warrant remand).

The plaintiff's citations to *Taylor v. Astrue*, No. 7:10-CV-149-FL, 2011 WL 2669290 (E.D.N.C. July 7, 2011), and *Smith v. Astrue*, No. 3:08-cv-406-J-TEM, 2009 WL 3157639 (M.D. Fla. Sept. 25, 2009), for the proposition that the administrative law judge committed reversible error in failing to consider the DHHS determination, *see* Statement of Errors at 6, do not persuade me otherwise. As the commissioner points out, *see* Opposition at 4, the plaintiff cites no authority within this circuit for that proposition. In any event, as the commissioner notes, *see id*. at 4 n.1, *Smith* is inapposite in that it pertains to VA disability ratings decisions, *see Smith*, 2009 WL 3157639, at *7, which, as noted above, this court has held are entitled to at least some weight, *see, e.g., Genness-Bilecki*, 2016 WL 4766229, at *5. *Taylor* is distinguishable in that the court indicated that it could not find harmless error in an administrative law judge's failure to consider a Medicaid decision employing the same standards as those of the commissioner. *See Taylor*, 2011 WL 2669290, at *5. Yet, as discussed above, the manner in which DHHS analyzed the question of disability in this case differs from that of the commissioner, and its determination is not inconsistent with that of the administrative law judge.

Remand, accordingly, is not warranted on the basis of this point of error.

### B. Rejection of Treating Physician's Opinion

Dr. Kriegel submitted a physical RFC questionnaire dated January 27, 2014, in which he indicated, *inter alia*, that the plaintiff could sit for only 15 minutes at a time and stand for only 10 minutes at a time before needing to change position and could sit or stand/walk for less than two hours in an eight-hour workday. *See* Record at 413-14. He also stated, *inter alia*, that she would

9

require unscheduled breaks of 15 to 20 minutes daily and would miss more than four days of work per month. *See id*. at 414-15.

The administrative law judge gave the Kriegel opinion "little weight[,]" explaining that (i) it had "little support in the record, and little support in his own treatment notes[,]" (ii) prior to completing the opinion, Dr. Kriegel "offered no work-related limitations" for the plaintiff, and (iii) "[e]xamination findings by rheumatology specialist NP Lowe [Marci Lowe, A.R.N.P.] and neurologist Dr. O'Connell [John C. O'Connell, M.D.] do not support his opinion." *Id*. at 19. She gave "great weight" to the May 25, 2013, physical RFC opinion of agency nonexamining consultant Marcia Lipski, M.D., which she deemed consistent with, and supported by the weight of, the medical record. *See id*. at 19, 103-04.

The plaintiff complains that the administrative law judge failed to supply the requisite "good reasons" for giving Dr. Kriegel's opinion little weight. *See* Statement of Errors at 6-9; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."). She argues that, in deeming the Kriegel opinion inconsistent with the record, including Dr. Kriegel's own notes, the administrative law judge (i) ignored the DHHS disability determination, (ii) misconstrued Dr. O'Connell's diagnosis of peripheral neuropathy as a rejection of the diagnosis of fibromyalgia, and (iii) failed to supply any specific reasons for according the opinion little weight. *See* Statement of Errors at 7-9. She adds that the Kriegel opinion merited greater weight by virtue of the length of the treatment relationship (25 years) alone. *See id*. at 7.

The plaintiff's bid for remand on this basis falls short.

First, for the reasons discussed above, the administrative law judge's error in omitting to discuss the DHHS disability determination does not call into question her handling of the Kriegel

opinion. In addition, as the commissioner points out, *see* Opposition at 8-9, the argument is circular. As noted above, DHHS based its disability finding on an April 6, 2011, statement from Dr. Kriegel that is even less specific than the opinion at issue here: Dr. Kriegel had merely stated that the plaintiff could not work and was disabled. *See* Record at 401.

Second, the administrative law judge did not misconstrue Dr. O'Connell's diagnosis as a rejection of the diagnosis of fibromyalgia. She merely recited Dr. O'Connell's findings. *See id.* at 18. She found that the plaintiff had a severe impairment of fibromyalgia. *See* Finding 3, *id.* at 15.

Finally, the administrative law judge did supply specific reasons for deeming the Kriegel opinion inconsistent with the record. In mentioning the notes of Lowe and Dr. O'Connell, *see id.* at 19, she alluded to her earlier summary of the record evidence, including the following observations:

1. Although Lowe, a rheumatology specialist, had confirmed the plaintiff's diagnosis of fibromyalgia, Lowe's clinical findings did not support a degree of limitation that would preclude all work. *See id.* at 18. Upon examination in December 2011, Lowe corroborated pain over all fibromyalgia tender points with no joint deformities and no focal neurological deficits, and, in February 2012, she described the plaintiff's general health as stable and her fibromyalgia as improving with treatment. *See id.*

2. On February 6, 2013, Dr. O'Connell conducted a neurological examination secondary to the plaintiff's sensory loss in her left lower extremity, noting that there was not a lot of back pain, no atrophy or fasciculations, normal bulk and tone, and no edema. *See id.* He noted that the plaintiff denied joint pain, joint swelling, muscle cramps, muscle aches, and muscle weakness and confirmed that she had a normal gait and her neck was supple with full range of

11

motion. *See id*. He verified on EMG testing that the plaintiff had sensory loss in the distribution of the left superficial peroneal sensory nerve, but documented strength at 5/5 in all muscle groups with normal coordination, tone, and reflexes, and tandem gait with no ataxia. *See id*. Although he described some limitations due to fibromyalgia and peroneal sensory neuropathy with persistent symptoms, he cited the plaintiff's ongoing activities of daily living, including making meals, doing light chores, using public transportation, shopping, watching television, and reading. *See id.*

3. Upon reexamination in May 2013, Dr. O'Connell found no joint pain, joint swelling, muscle cramps, muscle aches, muscle weakness, or saddle anesthesia. *See id*. He noted that the plaintiff denied weakness, seizures, tremors, vertigo, frequent headaches, tingling, or numbness. *See id*. He confirmed that the plaintiff's neck was supple with a full range of motion, and that her range of motion was normal, she had full 5/5 strength in her bilateral upper and lower extremities, and her reflexes, gait, and tandem walk were normal. *See id*.

The plaintiff has not challenged the accuracy of these summaries. *See* Statement of Errors at 6-9. At oral argument, the plaintiff's counsel contended that the administrative law judge – and counsel for the commissioner – focused unduly on Dr. O'Connell's irrelevant negative findings, ignoring his relevant positive finding (incorporated in the Kriegel opinion) of peroneal sensory neuropathy of the left lower extremity, which he asserted would affect her gait, sensation, and ability to stand. Yet, the administrative law judge relied in part on negative findings that, even by the plaintiff's definition, are relevant in that they bear on her ability to walk and stand, including Dr. O'Connell's findings of normal range of motion, documented strength at 5/5 in all muscle groups with normal coordination, tone, and reflexes, and tandem gait with no ataxia. *See* Record at 18.

The administrative law judge, therefore, supportably found the Kriegel opinion inconsistent with other substantial evidence of record. That, in turn, was a legitimate basis on which to accord it little weight. *See, e.g., Ramos v. Barnhart*, 119 Fed. Appx. 295, 296 (1st Cir. 2005) (administrative law judge properly gave little weight to a treating psychiatrist's opinion that was "inconsistent with the bulk of the medical evidence" and "not supported by any progress notes or clinical or laboratory findings"); *Williams v. Colvin*, No. 1:14-CV-00034-JCN, 2015 WL 127883, at *3 (D. Me. Jan. 8, 2015) (no error when administrative law judge gave little weight to opinions of treating physicians that were not supported by the medical record).

While, as the plaintiff observes, *see* Statement of Errors at 7, the length of her treatment relationship with Dr. Kriegel was a factor weighing in favor of the opinion, *see, e.g.*, 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i), that did not prevent the administrative law judge from assigning it little weight overall, based on its inconsistency with substantial evidence of record, *see, e.g.*, *Ramos*, 119 Fed. Appx. at 296; *Williams*, 2015 WL 127883, at *3.

The plaintiff falls short of demonstrating entitlement to remand on this basis.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

***Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.***

Dated this 26th day of December, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge